IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VENICA WILLIS, | § § § | |
| *Plaintiff* | § § § | SA-16-CA-00887-ESC |
| vs. | § § § | |
| SAN ANTONIO ISD, | § § § | |
| *Defendant* | § § § | |

**ORDER**

Before the Court is the Motion for Summary Judgment [#31] filed by Defendant San Antonio Independent School District ("SAISD"), the Response [#36] filed by Plaintiff Venica Willis, and Defendant's Reply [#38]. The Court has federal question jurisdiction over this case pursuant to the Americans with Disabilities Act of 1990, as amended ("ADA"). *See* 28 U.S.C. §1331. The undersigned has authority to enter this Order as both parties have consented to proceed before a magistrate judge [#11, #12]. *See* 28 U.S.C. § 636(c)(1).[1]

Defendant has moved for summary judgment on Plaintiff Venica Willis's ADA claims. Plaintiff's complaint also purports to sue Defendant under Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Age Discrimination in Employment Act of 1967, as amended ("ADEA"). Defendant in its summary judgment motion makes clear that it interprets a previous order of this Court to dismiss all of Plaintiff's claims other than her ADA claims. That Order [#3] was issued by U.S. Magistrate Judge Pamela Mathy, who has since retired and was succeeded by the undersigned. In her Order, Judge Mathy explicitly granted Plaintiff permission

---

[1]This case was initially assigned for all purposes to Magistrate Judge Pamela Mathy [#13] but was reassigned to the undersigned on January 18, 2017 upon Judge Mathy's retirement.

1

to proceed *in forma pauperis* (IFP) on her ADA claims, but did not explicitly authorize her to proceed on her ADEA or Title VII claims.

To clarify the record, for the reasons stated in Section I, Plaintiff's ADEA and Title VII claims are **DISMISSED**. In addition, for the reasons stated in Section II, Defendant's Motion for Summary Judgment on Plaintiff's ADA claims [#31] is **GRANTED**.

I.  **Plaintiff's Unexhausted Title VII and the ADEA Claims are Dismissed.**

Plaintiff's claims for race, color, and sex discrimination under Title VII, as well as her claim of age discrimination under the ADEA, must be dismissed. In a case that involves a plaintiff who is proceeding IFP, a court must dismiss any claim at any time if the court determines that the claim is frivolous or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i), (ii).[2] In evaluating whether an IFP plaintiff has stated claim in her complaint under § 1915(e)(2)(B), a court must apply the same standards governing dismissals pursuant to Rule 12(b)(6). *See DeMoss v. Crain*, 636 F.3d 145, 152 (5th Cir. 2011). To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007)). These factual allegations need not be detailed but "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A conclusory complaint—one that fails to state material facts or merely recites the elements of a cause of action—may be dismissed for failure to state a claim. *See id*. at 555–56.

---

[2]Section 1915(e) applies to both prisoner and non-prisoner IFP cases. *See Hayes v. Scott*, 116 F.3d 137, 140 (5th Cir. 1997) (examining the text and legislative history of 28 U.S.C. § 1915(a)(1) and finding that statute was intended to apply to prisoners and non-prisoners).

Of course, courts must construe *pro se* complaints liberally. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 465 (5th Cir.2010). A *pro se* complaint, even if inartful, "must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Richardson v. Fleming*, 651 F.2d 366, 368 (5th Cir. 1981) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)) (internal quotations omitted). But a plaintiff's *pro se* status will not serve as "an impenetrable shield . . . [to] clog the judicial machinery with meritless litigation . . ." *Farguson v. Mbank Houston N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

Plaintiff's complaint contains claims for multiple forms of discrimination, including race, color, sex, age, and disability. Prior to filing a lawsuit alleging discrimination against a former employer, an employee is required to exhaust administrative remedies. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). To exhaust a claim, an employee alleging discrimination must first file a charge of discrimination with the EEOC. *Id.*; *see also Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (timely filing a charge with the EEOC is a precondition to filing suit in district court). After the EEOC completes its investigation of the charge and issues its right-to-sue letter, the employee who filed the charge can sue the employer in federal court, but only for the same type of discrimination that was alleged in the charge, and that the EEOC therefore had the opportunity to investigate. *See Bouvier v. Northrup Grumman Ship Sys., Inc.,* 350 Fed. App'x 917, 921 (5th Cir. 2009) (although courts construe an EEOC charge "somewhat broadly" to determine "what EEOC investigations it can reasonably be expected to trigger," a plaintiff's failure to reference one form of discrimination in her charge defeats her ability to file suit for such a claim) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 792

(5th Cir. 2006)); *see also Floyd v. Commc'ns Workers of Am.*, 532 F. Supp. 2d 816, 822 (S.D. Miss. 2006) ("The Fifth Circuit will not permit plaintiffs to enlarge the scope of their EEOC charges by adding to their lawsuits complaints of a wholly different type of discrimination than that alleged in the plaintiffs' EEOC charges.")

That means the employee must limit the discrimination claims asserted in the lawsuit to the type of discrimination explicitly described in the EEOC charge, other claims that are "like or related" to the discrimination the employee described in the charge, and claims that could "reasonably be expected to grow" out of the discrimination described in the charge. *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993); *see also Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466-67 (5th Cir. 1970) (scope of a judicial complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination). So, for instance, where an employee only included allegations of race and age discrimination in her EEOC charge, she was precluded from also suing for sex discrimination. *See Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990).

The form EEOC charge document contains boxes that an employee can check describing different forms of discrimination, including "age," "sex," "race," and other protected categories. While an employee does not necessarily doom her discrimination claim if she fails to check the appropriate box so long as her factual description of the discrimination puts the EEOC on notice of the various types of discrimination she is alleging, if the employee neither checks the box nor describes facts that would support a particular category of discrimination, that type of discrimination claim will be deemed unexhausted. *See Pacheco*, 448 F.3d at 792 (although plaintiff's failure to check the box for age or national original discrimination was not fatal,

dismissal was appropriate because plaintiff also failed to provide any information in his factual statement regarding such claims).

In this case, Plaintiff filed a charge with the EEOC, which she attached to her complaint when she filed her lawsuit. (*See* Orig. Compl. at 6-7.) In her charge, she complained of discriminatory treatment based upon her weight, and she checked the box for discrimination based on "disability" only.[3] (*Id.* at 6.) She did not check the boxes for "sex," "race," "color," or "age." Nor in describing the factual basis of her discrimination claim did she allege any facts that would have suggested that she was claiming to be retaliated or discriminated against based on anything other than her alleged disability so that the EEOC would have been on notice to investigate potential sex, race, color, or age discrimination. Her allegations of discrimination based on sex, race, color, and age are not "like or related to" the allegations in her Charge and could not "reasonably be expected to grow out of" the charge. Thus, Plaintiff's sex, race, color, and age discrimination claims are unexhausted, assuming the EEOC charge she attached to her complaint is the only EEOC charge she filed.

A plaintiff bears the burden to plead and ultimately prove administrative exhaustion. *See DeJesus-Harris v. Blockbuster Video*, No. CIVA SA04-CA-1099XR, 2006 WL 2620510, at *5 (W.D. Tex. Sept. 5, 2006); *see also Smith v. Flagship Int'l*, 609 F. Supp. 58, 61 (N.D. Tex. 1985) (citing *Crawford v. W. Elec. Co., Inc.*, 614 F.2d 1300, 1306 (5th Cir. 1980)). Where a plaintiff fails to do so, dismissal is appropriate. *DeJesus-Harris,* 2006 WL 2620510, at *5; *Smith,* 609 F. Supp. at 61. Here, Plaintiff filed a lawsuit on a form pleading that explicitly directs her to attach

---

[3]Although Plaintiff did not check the box for "retaliation," she provided sufficient facts in her charge to support a claim for retaliation in violation of the ADA. *See Pacheco*, 448 F.3d at 792; *see also Sanchez,* 431 F.2d at 462 ("[T]he crucial element of a charge of discrimination is the factual statement contained therein.").

5

any EEOC charge she filed. (*See* Orig. Compl. at 4.) She attached one charge—which only alleges disability discrimination and retaliation. Thus, Plaintiff failed to satisfy her burden of pleading and proving that she administratively exhausted her Title VII and ADEA claims. Accordingly, Plaintiff's Title VII and ADEA claims must be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e).

**II.     Defendant's Motion for Summary Judgment on Plaintiff's ADA Claims is Granted.**

Defendant is entitled to summary judgment on Plaintiff's remaining claims—disability discrimination and retaliation under the ADA. The uncontroverted evidence in the record establishes that Plaintiff will not be able to establish an essential element of each claim, and that Defendant is entitled to judgment as a matter of law.

**A. Summary Judgment Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.

Although courts are more lenient with *pro se* plaintiffs than attorneys, *pro se* plaintiffs must still comply with the Federal Rules of Civil Procedure by presenting competent summary judgment evidence that demonstrates a genuine issue of material fact. *Rolen v. City of Brownfield, Tex.*, 182 Fed. App'x 362, 365 (5th Cir. 2006). This is because a *pro se* plaintiff (like a represented party) may not defeat summary judgment with unsupported allegations if the evidence is to the contrary. *See Gordon v. Watson,* 622 F.2d 120, 123 (5th Cir. 1980) (per curiam) ("Although *pro se* litigants are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, we have never allowed such litigants to oppose summary judgments by the use of unsworn materials."); *see also McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (noting in civil rights case brought by *pro se* plaintiff that "[s]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence"); *Hall v. Thaler*, No. CIV.A. H-07-0763, 2010 WL 883730, at *3 (S.D. Tex. Mar. 11, 2010) (broadly construing the *pro se* plaintiff's filings but noting that "even a *pro se* party's unsupported statement will not defeat summary judgment if the evidence in the record is to the contrary"). Provided a defendant meets its burden under Rule 56, a *pro se* plaintiff cannot survive the motion by resting on the allegations in his or her pleadings.

*Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988). In light of Plaintiff's *pro se* status, the Court specifically directed her to submit with her response "any evidence that would establish that a genuine issue of material fact exists that would preclude the Court from granting summary judgment" [#34].

**B. Facts Supported by the Summary Judgment Record**[4]

Plaintiff is a substitute teacher for Defendant SAISD. (*See* Exs. A & B ¶¶ 3 to Motion.) As a substitute teacher for SAISD, Plaintiff primarily worked at SAISD's Douglass Elementary campus but accepted assignments at other SAISD campuses. (*See* Ex. B ¶ 3 to Motion.) In or around April 2016, SAISD's principal Stephanie Ratliff received complaints regarding Plaintiff's work performance. (*See* Exs. A ¶¶ 4-9 & B ¶ 4 to Motion.) According to these complaints, Plaintiff displayed a negative attitude regarding her classroom assignments, failed to show up for some substitute assignments, clashed with other substitute teachers, lacked sufficient courtroom management, and made "reckless and inaccurate" comments about student testing procedures. (Exs. A ¶¶ 4-9 & B ¶ 4 to Motion.)

After receiving these complaints, Ms. Ratliff held an in-office conference with Plaintiff on or about April 11, 2016. (Exs. A ¶ 9 & B ¶ 4 to Motion.) At the conclusion of this conference, Ms. Ratliff informed Plaintiff that she would not be invited back to substitute at Douglass Elementary at least for the few months that remained in the 2015 to 2016 school year. (Exs. A ¶ 10 & B ¶ 5 to Motion.) Ms. Ratliff documented the employment decision in a Substitute Removal Form, identifying Plaintiff's removal as "campus only" and for an

---

[4]Despite instructing Plaintiff to submit evidence in opposing Defendant's Motion, Plaintiff's Response consists entirely of unsworn allegations. Because unsworn allegations cannot create a genuine issue of material fact to avoid summary judgment, this Section only includes facts supported by competent summary judgment evidence. *See Gordon*, 622 F.2d at 123.

"indefinite[]" duration. (Exs. A ¶ 10, A-1, B ¶ 5, & B-1 to Motion.) Thus, although SAISD removed Plaintiff from the list of available substitutes for Douglass Elementary "indefinitely," Plaintiff remained on its District-wide substitute teacher list. (Exs. A ¶ 10, A-1, & B ¶ 5 to Motion).

On May 16, 2016, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting claims for discrimination and retaliation in violation of the ADA. (*See* Orig. Compl. at 6.) Less than a month later, on June 6, 2016, the EEOC issued its Notice of Rights. (*Id.* at 5.) Plaintiff subsequently filed suit on September 2, 2016, asserting claims for race, color, and sex discrimination pursuant to Title VII, age discrimination pursuant to the ADEA, and disability discrimination and retaliation pursuant to the ADA. (*Id.* at 1-3).

In her sworn Complaint, Plaintiff alleges that from August 2015 to the present, she was subjected to several sexually offensive remarks and shown a pornographic video and nude pictures. (*Id.* at 3.) She also complains that she "was caused to make less pay and they knew my situation," and that she "had to email [her] supervisor in April because [she] was denied a grievance by four different people." (*Id.*) Finally, Plaintiff claims that a co-worker called her son "retarded and slow." (*Id.*)

Plaintiff attached the charge that she submitted to the EEOC to her sworn Complaint. (*Id.* at 6-7.) In her sworn charge, Plaintiff claims that she was "subject to a constant hostile work environment based on [her] weight." (*Id.* at 6.) Specifically, Plaintiff complains that her co-workers made several "derogatory" and "humiliating" comments about her weight including referring to Plaintiff as a "pork chop ass" and asking her how it feels to be fat. (*Id.*) Plaintiff also alleges that when she complained about knee pain, a co-worker stated that the pain was

caused by "all that fat [she] was carrying." (*Id.*) Plaintiff contends that she complained to her immediate supervisor Mr. Arnoldo Gutierrez about these "derogatory fat comments." (*Id.*) Plaintiff swears that she emailed Mr. Gutierrez "a detailed multiple page report documenting the who, what and where of [the] harassment." (*Id.*)[5] SAISD does not confirm or deny in its Response or Reply whether Plaintiff submitted the grievance she claims she submitted. Instead, SAISD asserts that Plaintiff failed to follow SAISD's grievance procedure, which allegedly governs all employment-related complaints, concerning Plaintiff's removal from the Douglass Elementary substitute teacher list. (*See* Exs. A ¶ 14, A-1, B ¶ 9, & B-1.)

SAISD now moves for summary judgment on Plaintiff's ADA claims arguing that Plaintiff cannot establish a prima facie case of discrimination or retaliation. Alternatively, SAISD argues that summary judgment is appropriate because it has articulated legitimate non-discriminatory and non-retaliatory reasons for removing Plaintiff from the list of available substitute teachers for Douglass Elementary.[6]

---

[5] On March 17, 2017, the deadline to file motions to amend or to supplement pleadings [#17], Plaintiff filed a document entitled "Amend & Supplement Pleadings" [#27] ("Supplemental Complaint"). Plaintiff's Supplemental Complaint contains various additional factual allegations and unauthenticated documents, which presumably support her claims, including a document that appears to be the grievance Plaintiff claims she submitted to Mr. Gutierrez on approximately April 19, 2016. But because Plaintiff's Supplemental Complaint consists entirely of unsworn allegations, these materials cannot be used to create a genuine issue of material fact to defeat summary judgment. *See Gordon*, 622 F.2d at 123.

[6] Defendant also argues that the Court lacks jurisdiction to consider Plaintiff's claims because Plaintiff failed to exhaust SAISD's administrative process as provided by SAISD Board Policy. But Defendant provides no authority to suggest that exhausting a school district's internal grievance procedures is a precursor to filing suit based upon the violation of a federal statutory right; nor has the Court located such authority. To support its argument, Defendant primarily relies on Texas state court opinions in suits brought either for violation of "school laws" or for violation of a Texas statute. (*See* Motion at 4-6) (*citing Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 543 (Tex. 2016) (dismissing suit challenging school district's distribution of funds because Section 7.057 of the Texas Education Code requires persons complaining about the "management of the school system" or the "administration of school laws" to exhaust their

Plaintiff opposes summary judgment in an unsworn response, arguing without submitting any evidence that SAISD took several actions that she considers discriminatory. First, Plaintiff argues that SAISD failed to provide her with any "summer work," resulting in her receiving less pay compared to prior years.[7] (*See* Response at 2-3.) Second, Plaintiff argues that SAISD forced her to work at "scattered sites" without a means of transportation. (*See id.* at 3) ("SAISD knew they took my ride away and put me in a disadvantage. Solely riding the bus limits me even more."); (*see also* Orig. Compl. at 7) ("By not being allowing me to work close in the area of which I live it limits me to work where I would be close to home and buss [sic] accesses [sic] within the time frames.") Third, Plaintiff argues that SAISD "kicked" her son out of the St. Philip's ECHS program, and that the principal refused to sign his withdrawal papers. (Response at 4-5.) Finally, Plaintiff argues that SAISD took certain allegedly discriminatory actions against another individual who worked for SAISD and who is presumably within Plaintiff's protected class. (*Id.* at 5-6.)

---

school district's administrative remedies before courts can exercise jurisdiction); *Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 295 (Tex. 2001) (dismissing school district custodian's claim for workers' compensation retaliation because he failed to exhaust the school district's grievance procedures)). But Plaintiff has asserted discrimination claims under federal law, not state law; she does not allege mere "school law" complaints. Accordingly, both *Clint* and *Wilmer-Hutchins* are inapposite. The one federal case cited by Defendant, *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp,* also does not support Defendant's argument, as it concerns a breach of contract dispute brought by private crop insurers against the Federal Crop Insurance Corporation requiring the court to analyze the Department of Agriculture Reorganization Act of 1994. *See* 440 F.3d 992, 996 (8th Cir. 2006).

[7] Although Plaintiff references a "[c]heck stub on file dated August 2015" to support this allegation, no such evidence exists in the summary judgment record.

## C. Analysis of Plaintiff's ADA Discrimination and Retaliation Claims

Defendant is entitled to summary judgment on Plaintiff's ADA claims for discrimination (disparate treatment) and retaliation. Because the summary judgment record contains no direct evidence of disability discrimination[8] or retaliation, this Court must apply the *McDonnell Douglas* burden shifting framework in deciding whether summary judgment is appropriate. *See E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009) (applying *McDonnell Douglas* framework to plaintiff's claims of disability discrimination); *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998) ("*McDonnell Douglas* provides the appropriate burden-shifting analysis for claims of unlawful retaliation under the ADA."). Under the *McDonnell Douglas* framework, the initial burden of establishing a prima facie case of discrimination or retaliation lies with the plaintiff. *Chevron Phillips,* 570 F.3d at 615; *Sherrod,*

---

[8] Defendant construes Plaintiff's complaint to only allege disparate treatment and retaliation claims under the ADA. It, appears, however that Plaintiff may also be attempting to allege that she was subjected to a hostile work environment based upon comments regarding her alleged obesity. Her sworn charge identifies a handful of rude comments by her coworkers about her weight, and she uses the term "hostile work environment." Assuming without deciding that obesity could qualify as a disability under the ADA, and therefore, that harassment about her weight could qualify as harassment based on a disability, Plaintiff has nevertheless failed to even allege facts that would come close to what is required by the Fifth Circuit to establish that she was subjected to harassment that qualifies as "severe" or "pervasive." *See McConathy v. Dr. Pepper/Seven Up Corp.,* 131 F.3d 558, 564 (5th Cir. 1998) (supervisor's "insensitive and rude" comments regarding the slow pace of plaintiff's recovery from surgery were insufficient as a matter of law to state a hostile environment claim) (citing *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 595–96 (5th Cir.1995) (noting that "mere utterance of an . . . epithet which engenders offensive feelings in an employee" is not enough to constitute hostile environment harassment)); *see also Pickens v. Shell Tech. Ventures Inc.*, 118 Fed. App'x 842, 850 (5th Cir. 2004) ("racially insensitive" comments made by employees at a Christmas party were not severe or pervasive enough to create a hostile work environment); *Nadeau v. Echostar*, No. EP-12-CV-433-KC, 2013 WL 5874279, at *32 (W.D. Tex. Oct. 30, 2013) (manager's alleged taunt that Plaintiff is "looking sick" and remark that "this job is not for you if you have a health problem," constituted "occasional teasing, offhand comments, and non-serious isolated incidents that are not actionable.") (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

132 F.3d at 1122. If the plaintiff establishes a prima facie case, only then does the burden shift to the employer to show a legitimate, non-discriminatory or non-retaliatory reason for its actions. *Chevron Phillips,* 570 F.3d at 615; *Sherrod,* 132 F.3d at 1122. If the employer offers such a reason, then the burden shifts back to the plaintiff to show that the justification is merely pretext for discrimination or retaliation. *Chevron Phillips,* 570 F.3d at 615; *Sherrod,* 132 F.3d at 1122.

1. **Defendant is entitled to summary judgment on Plaintiff's disparate treatment disability discrimination claim because there is no evidence that Plaintiff suffered an adverse employment action.**

Plaintiff has not met her burden to provide evidence to support an essential element of her prima facie discrimination claim—that she suffered an adverse employment action. For a plaintiff to establish a prima facie case of discrimination under the ADA, [9] the plaintiff must establish that she suffered an "adverse employment action." *Chevron Phillips*, 570 F.3d at 615. An "adverse employment action" for purposes of an ADA discrimination claim consists of "ultimate employment decisions," such as hiring, granting leave, discharging, promoting, or compensating. *McKay v. Johanns*, 265 F. App'x 267, 268–69 (5th Cir. 2008) (applying Title VII case law on the adverse employment action element to ADA and Rehabilitation Act claims); *see also Tran v. Pflugerville Indep. Sch. Dist.*, No. A-13-CA-145 DAE, 2014 WL 12160774, at *5 (W.D. Tex. May 23, 2014), *report and recommendation adopted sub nom.*, 2014 WL 12160775 (W.D. Tex. June 17, 2014) (denial of teacher's request for a printer and private classroom was not an ultimate employment decision and hence, did not constitute an adverse employment action for purposes of plaintiff's ADA discrimination claim).

---

[9] A plaintiff alleging disparate treatment under the ADA must also allege that she suffers from a disability. *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995). Defendant argues that Plaintiff's weight cannot constitute a disability as a matter of law. Because the Court concludes that Plaintiff did not suffer an adverse employment action, it does not reach the issue of whether Plaintiff is disabled for purposes of the ADA.

Plaintiff alleges in her complaint that Defendant terminated her employment; termination, of course, constitutes an adverse employment action. But Defendant submitted evidence that it did not terminate Plaintiff's employment with the District. According to sworn statements from Dr. Ratliff, the principal at Douglass Elementary, and Jason Pirruccello, Defendant's Director of Policies and Public Information, Defendant removed Plaintiff from the Douglass Elementary substitute teacher list, not the District-wide list. (*See* Ex. A to Motion ¶ 10; Ex. A-1 to Motion; Ex. B ¶ 5.) Plaintiff has not submitted evidence to contradict this evidence.[10]

Instead, Plaintiff argues, without providing any evidence, that Defendant's actions forced her to work as a substitute teacher at "scattered sites" within the District, and that she did not have transportation for this commute. (*See* Response at 3.) In other words, Plaintiff is not arguing that she was transferred to a different SAISD campus—she was always on the substitute teacher list for the whole district. But she appears to have only accepted requests to substitute at Douglass the majority of the time due to reasons related to her own personal convenience. Accordingly, the situation about which Plaintiff complains is similar to a situation where a plaintiff alleges that his or her transfer to a different job site with the same employer is discriminatory. However, even a transfer to a new position at a different job site with the "same job title, benefits, duties, and responsibilities" is considered "purely lateral" and therefore does not constitute an adverse employment action for purposes of a plaintiff's discrimination claim. *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999); *see also Outley v. Luke & Associates, Inc.*, 840 F.3d 212, 216 (5th Cir. 2016). Only transfers that are "the

---

[10] Indeed, Plaintiff's own pleadings—which contain an August 18, 2016 email from SAISD to Plaintiff requesting "extra support" from its substitute teachers for the first few weeks of the 2016-2017 school year—support Defendant's position that it did not remove Plaintiff from the District-wide list of substitute teachers. (Supp. Compl. at 22.)

equivalent of a demotion, such that the new position proves objectively worse" constitute adverse employment actions. *Outley*, 840 F.3d at 216-17 (plaintiff's transfer from defendant's inpatient facilities to its outpatient facilities was not an adverse employment action where plaintiff's pay remained the same, she retained her full-time status, and plaintiff submitted no evidence that an outpatient role was "objectively viewed as less prestigious or desirable" than an inpatient role).

Plaintiff does not claim (let alone submit any evidence) that substitute teaching at other SAISD campuses, would have resulted in different job duties, responsibilities, or benefits or that working at other campuses was objectively viewed as less prestigious or desirable. Although Plaintiff alleges that she was offered less work (and hence less pay) after her removal from Douglass's substitute teacher list, she submitted no competent summary judgment evidence to support this allegation. Indeed, Plaintiff admitted in her sworn charge that since SAISD removed her from the Douglass's substitute teacher list, she has received *more* substitute-teaching opportunities within SAISD. (*See* Orig. Compl. at 7) ("I am now getting human resources emails about available jobs which I never got before.")

Plaintiff's complaints boil down to complaints about inconvenience. Though commuting to more distant school campuses via bus may be inconvenient for Plaintiff, new assignments that require longer commutes do not constitute adverse employment actions. *See, e.g., Cooper v. United Parcel Serv., Inc.,* 368 Fed. App'x 469, 474 (5th Cir. 2010) (plaintiff's transfer to a location that increased his commuting time by twenty-five minutes each way did not constitute an adverse employment action where plaintiff's new job provided the same title and benefits as his previous position); *Gray v. Sears, Roebuck & Co., Inc.,* 131 F. Supp. 2d 895, 904 (S.D. Tex. 2001) ("[A]n assignment to a position which has equal compensation, terms, conditions, and

privileges of employment—but which requires a longer commute—does not constitute an adverse employment action."). Because there is no evidence that Plaintiff suffered an adverse employment action, summary judgment must be granted on Plaintiff's ADA discrimination claim.[11]

2. **Defendant is entitled to summary judgment on Plaintiff's retaliation claim because there is no evidence to support a prima facie case of retaliation or that Defendant's legitimate non-retaliatory reasons are pretextual.**

Plaintiff has also failed to adequately support a prima facie claim of retaliation. The same burden-shifting framework that applies to Plaintiff's ADA discrimination claim also applies to her retaliation claim. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999). To establish a prima facie case of ADA retaliation, a plaintiff must establish that: (1) she participated in an activity protected by the ADA; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Id.*

A plaintiff participates in protected activity when she opposes an act of discrimination made unlawful by the ADA or participates in an investigation, proceeding, or hearing under the

---

[11] Plaintiff also complains (without any supporting evidence) that Defendant allegedly kicked her son out of the St. Phillip's ECHS program and that certain other individuals were also treated unfairly. (Response at 3-4.) Neither is an adverse employment action. While the alleged expulsion of Plaintiff's son might satisfy the materially adverse employment action standard for *retaliation* claims, it does not constitute an adverse employment action for purposes of Plaintiff's discrimination claim. *Cf. Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174 (2011) (explaining that "the antiretaliation provision [of Title VII], unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment"; hence, a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired). With regard to the alleged mistreatment of her coworker, Plaintiff does not have standing to bring a discrimination claim on behalf of other individuals. *See Equal Employment Opportunity Commission v. Mississippi Coll.*, 626 F.2d 477, 483 (5th Cir. 1980) ("[A] Title VII plaintiff may assert only his own right to be free from discrimination that has an effect upon him and may not assert the rights of others to be free from discrimination.").

ADA. *Haynes v. Penzoil Co.*, 207 F.3d 296, 299 (5th Cir. 2000) (quoting 42 U.S.C. § 2000e-3(a)). Protected activity may consist of an internal complaint to management regarding prohibited conduct. *See, e.g., Wiltz v. Christus Hosp. St. Mary,* No. 1:09–cv–925, 2011 WL 1576932, at *11 (E.D. Tex. Mar.10, 2011) *report and recommendation adopted*, 2011 WL 1576929 (E.D. Tex. Apr. 25, 2011). To establish a causal link for purposes of a prima facie case, a plaintiff must produce evidence demonstrating that "the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel* Co., 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod*, 132 F.3d at 1122). Thus, in order for a causal link to exist, an employer must have knowledge of the plaintiff's protected activity *prior to* taking the adverse employment action.

Even assuming without deciding that Plaintiff's grievance complaining about her co-worker's "derogatory fat comments" constitutes protected activity under the ADA, there is no evidence establishing a causal link between Plaintiff's grievance and Principal Ratliff's decision to remove Plaintiff from the list of available substitute teachers for Douglass Elementary. Plaintiff claims that she sent her grievance "around April 19, 2016"—one week *after* Defendant removed her from Douglass Elementary's substitute teacher list, which Plaintiff alleges is an adverse action.[12] (*See* Suppl. Compl. at 24-25.) A grievance made after an alleged adverse

---

[12] It is a closer call whether the removal from the substitute teacher list at Douglass qualifies as an adverse employment action for purposes of the retaliation claim. The standard for an adverse action in retaliation cases is lower than for disparate treatment claims and is governed by *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006). *See Grubic v. City of Waco,* 262 Fed. App'x 665, 667 (5th Cir. 2008) (applying *Burlington Northern* in ADA retaliation case); *see also McElroy v. PHM Corp.,* 622 Fed. App'x 388, 391 n. 4 (5th Cir. 2015). An action is an "adverse employment action" in a retaliation case if it would deter a reasonable employee from making a complaint. *Burlington*, 548 U.S. at 68. The Court need not decide this issue, however, because the lack of support for the causal link element is fatal to Plaintiff's retaliation claim.

action obviously cannot cause the adverse action. *See Davis v. Dallas Indep. Sch. Dist.*, No. 11–10090, 2011 WL 5299663, at *7 (5th Cir. Nov. 4, 2011) ("Because the protected activity occurred after the adverse employment action at issue, [plaintiff] cannot demonstrate causation."); *see also Dugas v. St. Charles Cmty. Health Ctr., Inc.*, No. CIV.A. 11-135, 2011 WL 6934694, at *9 (E.D. La. Dec. 29, 2011) ("The required causal link between the protected activity and the adverse action cannot be established if the protected activity occurred after the adverse employment action at issue."). Plaintiff has failed to meet her summary judgment burden on this element of her prima facie case, and Defendant is entitled to summary judgment on her retaliation claim on this basis alone.

Moreover, even if Plaintiff had produced evidence of a causal link, summary judgment is appropriate because SAISD articulated several legitimate non-retaliatory reasons for the alleged adverse employment action: Plaintiff's negative attitude, lack of reliability, poor classroom management, "reckless and inaccurate" comments about student testing procedures, and conflicts with co-workers. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 231 (5th Cir. 2015) (poor work performance constitutes a legitimate non-discriminatory reason when coupled with specific examples). Plaintiff failed to offer any evidence of pretext. Accordingly summary judgment is also appropriate because Plaintiff failed to raise a genuine issue of material fact that SAISD's legitimate non-retaliatory reasons for the alleged adverse employment action are pretextual. *See Sherrod,* 132 F.3d at 1123. Because there is no evidence that a causal link exists between the alleged protected activity and the alleged adverse employment action or that SAISD's reason for the alleged adverse employment actions is pretextual, summary judgment must be granted on Plaintiff's ADA retaliation claim.

### III. Conclusion

For the reasons discussed above, the Court enters the following orders:

**IT IS ORDERED** that Plaintiff's Title VII and ADEA claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e); and

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [#31] is **GRANTED.**

A separate final judgment shall issue.[13]

SIGNED this 11th day of August, 2017.

_____
ELIZABETH S. ("BETSY") CHESTNEY
U.S. MAGISTRATE JUDGE

---

[13] Although SAISD is a prevailing party in this action, the Court declines to award costs. A trial court has discretion to deny costs to a prevailing party provided it articulates "some good reason for doing so." *Pacheco*, 448 F.3d at 794. Such reasons include: (1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources. *Id.* (citing 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2668, at 234 (1998)). In a sworn affidavit attached to her IFP Motion [#1], Plaintiff states that her only source of income are child support and food stamps. In light of Plaintiff's indigency, awarding costs would be inappropriate.